IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAMELA JOANNE HECKMAN, )
)
        Plaintiff, )
)
v. )
) Civil Action No. 13-1407
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 24th day of March, 2015, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the

presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her applications for DIB and SSI on April 13, 2010, originally alleging disability beginning on July 3, 2007, but subsequently amended to February 6, 2010, due to depression, panic attacks, varicose veins and fibromyalgia. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on January 19, 2012, at which she appeared and testified while represented by counsel. On February 14, 2012, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on August 7, 2013, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 50 years old on her amended alleged onset date, and is classified as an individual closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d), 416.963(d). Plaintiff has past relevant work experience as a cleaner and a counter clerk, but she has not engaged in substantial gainful activity at any time since her amended alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ first found that plaintiff suffers from the severe impairments of major depressive disorder, anxiety, panic disorder with agoraphobia, fibromyalgia, varicose veins, headaches, carpal tunnel syndrome, obesity and a history of alcohol abuse in full remission; however, those impairments, alone or in combination, do not meet or equal the criteria of any of

%AO 72
(Rev. 8/82)

- 2 -

the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ next found that plaintiff retains the residual functional capacity to perform light work with an option to sit and stand for five minutes out of every hour. In addition, plaintiff is limited to performing simple, routine and repetitive work. Further, she is unable to work as part of a team, and she is precluded from contact with the public. Finally, plaintiff is restricted to only a moderate level of noise exposure (collectively, the "RFC Finding").

The ALJ concluded that plaintiff is unable to perform her past relevant work because it exceeds her residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as a marker, assembler or machine operator. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not,

whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity.[1] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh certain medical opinions; (2) the ALJ improperly substituted her own lay opinion for that of various physicians who issued medical opinions; and (3) the ALJ did not properly evaluate plaintiff's credibility. For reasons explained below, these arguments are without merit.

Plaintiff first argues that the ALJ failed to properly weigh the medical opinions issued by Dr. Edward Salopek, who treated her for fibromyalgia, and Dr. John Carosso, who performed a consultative psychological evaluation. According to plaintiff, the ALJ should have given their respective opinions controlling weight.

Dr. Salopek completed a form report entitled "Fibromyalgia Residual Functional Capacity Questionnaire." (R. 429-33). Dr. Salopek noted that plaintiff's prognosis was good and that she was capable of low stress jobs, (R. 429, 430), yet he rated her as being able to sit, stand and walk a total of only four hours in an eight hour workday, and predicted that she would be absent from work about three days per month. (R. 431, 432). The ALJ gave no weight to Dr. Salopek's assessment because it was inconsistent with plaintiff's physical examination findings and her conservative treatment. (R. 22).

---

[1] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a)(1), 916.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). Under this standard, the ALJ properly determined that Dr. Salopek's opinion was not entitled to any weight.[2]

As the ALJ explained, plaintiff's unremarkable physical examinations and the conservative nature of her treatment were contrary to Dr. Salopek's restrictive assessment of her physical capabilities and his prediction that she would miss work about three days per month. First, the form report upon which plaintiff relies is internally inconsistent, because on one hand Dr. Salopek indicates that plaintiff is capable of a low stress job, but on the other hand he assess restrictions that would preclude her from working. (R. 430, 431). In addition, as the ALJ observed, Dr. Salopek's opinion also is contradicted by his own treatment notes which show he provided only conservative treatment for plaintiff and that her medications were effective in controlling her symptoms.[3] (R.

---

[2] If a treating physician's opinion is not entitled to controlling weight, the ALJ will give it the weight she deems appropriate based on such factors as the nature and extent of the treatment relationship, whether the opinion is supported by medical signs and laboratory findings and whether the opinion is consistent with the record as a whole. See 20 C.F.R. §§404.1527(c)(2)-(4), 416.927(c)(2)-(4).

[3] The ALJ also pointed out that the opinion of Dr. Reynaldo Torio, a non-examining state agency physician who reviewed plaintiff's records in August 2010 and determined that she is capable of light work, (R. 348-53), supports the RFC Finding. Plaintiff critiques the ALJ's reliance upon Dr. Torio's opinion, arguing that subsequent medical evidence in the file from Dr. Salopek post-dated Dr. Torio's review. Contrary to plaintiff's position, the Regulations specify that state agency medical physicians, such as Dr. Torio, "are highly qualified ... physicians ... who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants ... as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §§404.1527(e)(2)(i), 416.927(e)(2)(i). In addition, the Third Circuit has rejected plaintiff's argument that the lapse of time between Dr. Torio's review and the subsequent administrative hearing made it inappropriate for the ALJ to rely on the opinion. See Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (recognizing that "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it"). It is for the ALJ to determine whether subsequent medical evidence impacts the earlier findings. Id., citing SSR 96-6p. After considering the evidence here, the ALJ relied on Dr. Torio's assessment for light work in crafting the RFC Finding, but included additional restrictions to accommodate plaintiff's other credibly established limitations. (R. 20, 22). Accordingly, the ALJ did not err in relying in part on Dr. Torio's opinion.

400-27). Accordingly, the court finds no error in the ALJ's consideration and weighing of Dr. Salopek's opinion.

Likewise, the ALJ properly evaluated and weighed the opinion issued by Dr. Carosso, who, after performing a one-time consultative psychological evaluation of plaintiff, rated plaintiff as having marked and extreme limitations in her ability to perform certain mental work-related tasks. Although Dr. Carosso found that plaintiff had only a slight limitation in understanding and remembering short, simple instructions, he concluded that she had a marked limitation in carrying out such instructions. (R. 360). Dr. Carosso also found that plaintiff was capable of interacting with co-workers and supervisors, but she was markedly limited in interacting appropriately with the public. (R. 360). Finally, Dr. Carosso rated plaintiff as being markedly limited in making judgments on simple work-related decisions and responding appropriately to changes at work and extremely limited in responding appropriately to work pressures. (R. 360).

The ALJ gave little weight to Dr. Carosso's opinion indicating marked to extreme limitations in certain mental work-related functions. As the ALJ explained, Dr. Carosso's objective findings explained in his written report did not support such a restrictive assessment of plaintiff. (R. 23). Plaintiff's concentration and attention were adequate, her insight and judgment were fair, and she was able to perform simple, repetitive tasks. (R. 357-58). In addition, Dr. Carosso's restrictive assessment of plaintiff's mental work-related capabilities was inconsistent with the GAF

AO 72
(Rev. 8/82)

score of 55 which he assigned plaintiff, indicating only moderate impairment in functioning.[4] (R. 23, 359).

After reviewing the record, the court finds that the ALJ fully considered and properly weighed Dr. Carosso's opinion, and explained why she gave it little weight. Although the ALJ decided Dr. Carosso's opinion was entitled to little weight, we note that she nevertheless accounted for plaintiff's mental limitations supported by the record (including those identified by Dr. Carosso) by restricting plaintiff to simple, routine and repetitive work that is not performed as part of a team and that does not involve contact with the public.

Plaintiff's next claim that the ALJ improperly "played doctor" and substituted her own lay opinion instead of relying on the medical opinions issued by Dr. Salopek and Dr. Carosso lacks merit. As discussed above, the ALJ properly evaluated the opinions of Dr. Salopek and Dr. Carosso and articulated valid reasons to support the amount of weight she gave those opinions.

Plaintiff's final argument is that the ALJ did not properly evaluate her credibility because the ALJ only focused on her activities of daily living to the exclusion of all other factors. According to plaintiff, the ALJ then relied on her ability to perform activities of daily living in finding her not disabled. Plaintiff is incorrect.

As required by the Regulations, the ALJ evaluated plaintiff's credibility by considering all of the relevant evidence in the record, including plaintiff's own statements about her symptoms and

---

[4]The GAF scale has been used by mental health clinicians to rate an individual's social, occupational and psychological functioning. The GAF scale considers those areas of functioning on a hypothetical continuum of mental health to illness. A score between 51-60 indicates that one has moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 2000). We note that the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale. See Brown v. Colvin, 2013 WL 6039018, at *7 n.3 (E.D. Wash. Nov. 14, 2013) (noting that the GAF scale was dropped from the DSM-5). However, the ALJ did not err by considering the GAF score Dr. Carosso assigned plaintiff as one part of her overall consideration of the evidence in this case.

limitations, her activities of daily living, the medical evidence of record, the extent of plaintiff's treatment and the opinions of physicians who treated and examined her. See 20 C.F.R. §§404.1529(c)(1) and (c)(3), 416.929(c)(1) and (c)(3); Social Security Ruling 96-7p. The ALJ then considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect her ability to work. 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4). The ALJ concluded that the objective evidence is inconsistent with plaintiff's allegation of total disabling limitations, and thus determined that plaintiff's testimony regarding her limitations was not entirely credible. (R. 21, 24-25). This court finds that the ALJ adequately explained the basis for her credibility determination, (R. 20-25), and is satisfied that such determination is supported by substantial evidence. See Schaudeck v. Commissioner of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999) (an ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony).

Finally, plaintiff's contention that the ALJ discounted her credibility, and ultimately found her not disabled, primarily because she was able to perform activities of daily living is unfounded. Although "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981), it is nonetheless appropriate for the ALJ to consider "the number and type of activities" in which the claimant engages. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002). Here, the ALJ observed that plaintiff was able to work part-time, take care of her own personal needs, prepare simple meals, do light cleaning and laundry, shop, use public transportation and handle her own finances. (R. 25). In accordance with the Regulations, it was proper for the ALJ to consider plaintiff's daily activities in conjunction with the record as a whole, which she did in this case, to determine whether

plaintiff's subjective complaints were credible and ultimately to make a disability determination.

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14226

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219